IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CROWN CASTLE FIBER LLC,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-21-1812 |
| **THE MAYOR AND CITY COUNCIL OF OCEAN CITY,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Crown Castle Fiber LLC ("Crown Castle") filed a Second Amended Complaint asserting various claims relating to the denial of approval to install certain small wireless facilities into new street light poles in Ocean City, Maryland. ECF 21. The defendant, the Mayor and City Council of Ocean City ("Ocean City") has filed a Motion to Dismiss (the "Motion"). ECF 24. This Court has reviewed the Motion, along with Crown Castle's opposition, ECF 27, and Ocean City's reply, ECF 32. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Ocean City's Motion will be denied.

**I.  Factual Background**

The following facts are derived from the Second Amended Complaint and are assumed to be true for purposes of this Motion. Crown Castle provides authorized telecommunications services, of various types, in Maryland. ECF 21 ¶¶ 2, 21. Provision of such services requires the installation of "nodes" that are affixed to utility or streetlight poles. *Id.* ¶ 24. Each node provides a coverage radius of about 300 feet. *Id.* ¶ 27. The elimination or misplacement of a node affects the service Crown Castle can provide to wireless-carrier customers. *Id.* ¶¶ 28, 32, 33.

Beginning in 2016, Crown Castle began investigating the requirements for obtaining approval to install its telecommunications network throughout Ocean City. *Id.* ¶ 36. Crown Castle and Ocean City entered into a Right of Way Use Agreement in February, 2017. *Id.* ¶ 37. Ocean City represented to Crown Castle that the process involved submitting a request to the Mayor and City Counsel, showing the proposed locations and designs of the nodes. *Id.* ¶ 38. If the Mayor and City Council approved the locations and designs, Crown Castle could proceed to the next stage of applying for a permit and completing a "Utility Installation Agreement" from the Department of Public Works. *Id.* Crown Castle used that process to receive approval to install telecommunications facilities in other locations in Ocean City. *Id.*

Starting in 2019, however, Crown Castle requested permission to install nodes in areas of Ocean City zoned as "R-1." *Id.* ¶ 39. Those initial requests were unsuccessful. *Id.* ¶ 41. On March 9, 2021, Crown Castle again requested approval to install nodes in three specific locations in the R-1 zone. *Id.* ¶ 41-43. Two of those locations had been previously rejected. *Id.* ¶ 45. The City Engineer, however, recommended approval of the three R-1 locations. *Id.* ¶ 52.

Although the Mayor and City Council held two meetings in March, 2021, they did not take any action as to Crown Castle's three proposed R-1 nodes. *Id.* ¶¶ 49, 53. Crown Castle then resubmitted its request on June 15, 2021. *Id.* ¶ 54. The City Engineer again recommended approval, and no member of the public voiced opposition. *Id.* ¶¶ 56-58. Nevertheless, at the June 15, 2021 meeting, the Mayor and City Council voted to deny Crown Castle's request. *Id.* ¶ 59. No written denial was issued, although the meeting minutes adopted on June 1, 2021 documented the denial in writing. *Id.* ¶¶ 61-63. This lawsuit ensued, with Crown Castle contending that Ocean City denied permission in violation of the federal Communications Act of 1934 and breached the Use Agreement between it and Crown Castle. ECF 21.

**II.     Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

3

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

Upon a Rule 12(b)(6) motion, the Court may consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see* Fed. R. Evid. 201. "The most frequent use of judicial notice . . . is in noticing the content of court records." *Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citation omitted). Here, however, Ocean City asks this Court to take judicial notice of a series of documents entitled

4

"Town of Ocean City, Maryland Utility Installation Agreement (UA) Project Summary Form" and a series of minutes from City Council meetings. ECF 24-1, 24-2. The issues relating to judicial notice will be addressed below.

### III.   Analysis

Ocean City contends that Crown Castle's claims under the federal Communications Act are premature. That Act imposes certain procedural and substantive requirements on the government's denial of applications for the deployment of personal wireless service facilities. *See, e.g.*, 47 U.S.C. § 332(c)(7)(B). In Ocean City's view, Crown Castle never submitted a formal application to install nodes in the three R-1 locations. Thus, Ocean City posits, it could not have rendered a "final decision" on any actual application, to permit Crown Castle to appeal. Ocean City's position fails whether or not this Court takes judicial notice of the proposed exhibits.

First, if Ocean City's proposed exhibits are not considered, this Court simply accepts as true the allegations contained in Crown Castle's Second Amended Complaint. Crown Castle alleges that Ocean City specifically advised it that it could not apply to install the nodes unless the Mayor and City Council first approved the location and design. ECF 21 ¶ 38. Under that construct as alleged in the Complaint, denial of approval by the Mayor and City Council could well amount to a final decision, since Crown Castle would be left with no recourse if, as alleged, it were also precluded by the denial from filing an application to obtain a more final pronouncement. At least under a motion to dismiss standard, then, dismissal would be inappropriate.

Second, however, even the attachments to Ocean City's motion do not prove its point. Ocean City cites Sec. 94-81 of the Town Code, which states "[a]ny person or company proposing to install utility lines within a public street or other public right-of-way must first apply for a permit and enter into a utility installation agreement on forms developed by the department of public

works." ECF 24-1 at 202. That language suggests a two-step process: (1) applying for a permit and (2) entering into a utility installation agreement on forms developed by the department of public works. The regulation provides no further guidance as to what constitutes an "application." The documents attached to the affidavit of Terence J. McGean, Ocean City's City Engineer, are not labeled "application." ECF 24-2. Instead, they appear to relate to the second step of the process, because they are comprised of a Utility Instillation Agreement Project Summary Form and various attachments. *Id.* Ocean City has not provided any ordinances or regulations confirming that those forms alone constitute an official "application" for installation, any more than a request for approval from the Mayor and City Council, which also requires supporting documentation, constitutes an application. Taking the record before this Court in the light most favorable to Crown Castle, even if judicial notice were to be taken of the attachments to Ocean City's motion, Crown Castle has stated a plausible claim that the denial of approval by the Mayor and City Council amounted to a denial of an application to install the three R-1 nodes.[1] Thus, this Court need not formally reach the appropriateness of taking judicial notice over the attachments, since Ocean City's Motion must be denied whether they are considered or not. If, during discovery, further evidence is developed on the issue of what constitutes a valid application, Ocean City will be free to renew its arguments at the summary judgment stage.

**IV.    Conclusion**

For the reasons set forth above, Ocean City's Motion to Dismiss, ECF 24, will be DENIED. A separate Order follows.

---

[1] Crown Castle's argument is bolstered by the fact that the "Distributed Cellular Antenna System (DAS) requirements modified Jan. 10, 2017" ("DAS Requirements") prohibit installation of new poles in an R-1 zoning district without approval of the Mayor and City Council. Their denial of approval, then, conclusively eliminated any possibility that Crown Castle could install its three nodes, even had it filled out some additional application paperwork.

Dated:  December 7, 2021              /s/
                                      Stephanie A. Gallagher
                                      United States District Judge

7